IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHALE HERRING,<br>    ID # 1884959,<br>        Petitioner,<br>vs.<br><br>LORIE DAVIS,[1] Director,<br>Texas Department of Criminal<br>Justice, Correctional Institutions Division,<br>        Respondent. | No. 3:15-CV-1921-K-BH<br><br>Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

### I. BACKGROUND

Michale Herring (Petitioner) challenges his conviction for murder in Cause No. F12-60987. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

**A.**     **Factual and Procedural History**

On December 14, 2012, the State indicted Petitioner for murder. (Doc. 12-4 at 86[2].) Petitioner pled guilty and received a 23-year sentence on September 19, 2013. (*Id.* at 89.) He did not appeal.

Petitioner's state habeas application, signed on August 21, 2014, was received by the state court on August 29, 2014. (*Id.* at 5, 21.) On May 13, 2015, the Texas Court of Criminal Appeals

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

denied the application without written order on the findings of the trial court without a hearing. (Doc. 12-1); *see Ex parte Herring*, No. WR-82,957-01 (Tex. Crim. App. May 13, 2015).

**B.      Substantive Claims**

On May 27, 2015, Petitioner mailed his federal habeas petition. (Doc. 1 at 14.) He raised the following claims, which he had raised at the state level:

(1) The State withheld exculpatory evidence (video surveillance tape) (grounds one and two);

(2) The police failed to preserve the video surveillance tape (ground four); and

(3) Trial counsel was ineffective because counsel failed to:

    (a) file a motion to compel disclosure of the video surveillance tape;

    (b) investigate eyewitnesses;

    (c) investigate any defense;

    (d) challenge the withholding of the video surveillance tape;

    (e) challenge the failure to preserve the video surveillance tape;

    (f) challenge the statements of witness Charles Savage, Sr.;

    (g) compel the disclosure of eyewitnesses' statements;

    (h) investigate discrepancies between the statements of witnesses Jeffrey Collins and Stephanie Herring and the police reports that were based on those statements (ground three).

Respondent filed a response on October 27, 2015. (Doc. 15.) Petitioner filed a reply on November 23, 2015. (Doc. 16.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new

3

context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends counsel was ineffective for failing to file a motion to compel disclosure of the video surveillance tape; investigate eyewitnesses; investigate any defense; challenge the withholding of the video surveillance tape; challenge the failure to preserve the video surveillance tape; challenge the statements of a witness; compel the disclosure of eyewitnesses' statements; and investigate discrepancies between witnesses' statements and police reports based on those statements.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. To successfully state a claim of ineffective assistance of counsel, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient

4

performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors. *Id.* at 695-96.

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

The *Strickland* test applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan,* 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson,* 397 U.S. 759, 770–71 (1970)).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*

5

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994).

A.  **<u>Video Surveillance Tape</u>**

Petitioner contends that counsel failed to file a motion to compel disclosure of the video surveillance tape, and challenge its withholding and the failure to preserve it.

During the state habeas corpus proceedings, the prosecutor submitted an affidavit stating:

> No surveillance recording was recovered from the Neon Cowboy Bar regarding this investigation.
>
> While preparing this case for trial I spoke with Detective Ellzey about the surveillance cameras at the Neon Cowboy. He informed me that cameras were present but no surveillance was recovered on this case. He said that the surveillance system could not download nor export this recording. He went back to the bar later on with a technician to try and download the recording but it still did not work. Detective Ellzey was under the impression that something had broken with the hard drive. All avenues to collect the surveillance were exhausted, and it was never recovered. … In preparing this affidavit I contacted Detective Ellzey again to discuss his attempts to recover surveillance from the Neon Cowboy. He confirmed these details, and the fact that they were unable to recover any surveillance video on this offense.
>
> It is my normal practice to turn over all videotapes or witness statements in advance of trial. I informed the defense attorney … that there was no surveillance videotape recovered on this case, along with Det. Ellzey's information as to why one was not collected.
>
> All the videotapes that were collected by the police were turned over to the defense in advance of trial.

(Doc. 12-3 at 13.) Defense counsel's affidavit stated:

> On January 10, 2013 a <u>Motion for Discovery and Inspection of Evidence</u> was filed on Mr. Herrings behalf requesting all evidence in the matters within the governments exclusive possession, custody and control through its agents. Further on, July 2, 2013, a <u>Motion for Disclosure of All Evidence Favorable to the Defendant Under Brady v. Maryland and Kyles v. Whitley</u> was filed on Mr. Herrings behalf in the

6

matters. On July 26, 2013, a pretrial hearing was held in the matters. Prior to the hearing, I met with the prosecutor and discussed the Motion for Discovery and Inspection of Evidence to which the prosecutor agreed to each of the 24 requests and affirmed that all evidence up to that point in time in his exclusive possession, custody and control or that of other government agents had been turned over or was available for inspection. ... It was my good faith belief based on the prosecutors' agreement to turnover all evidence requested in the Discovery motion, his statements, and my prior dealings with this prosecutor, that he had turned over all of the evidence in the governments exclusive possession, custody and control through its agents in the case ....

Additionally, on May 1, 2013, I met with Mr. Herring in jail and he specifically requested information regarding any surveillance videotape taken from the Neon Cowboy (offense location). The Detective had stated to Mr. Herring that the Detective had seen a surveillance video of the offenses before taking the confession of Mr. Herring. Having viewed Mr. Herring's confession, I was aware of that statement by the Detective and I had previously spoken with the prosecutor about the existence of any such video and receiving a copy. The prosecutor had stated that he would verify the existence/nonexistence of any such video with the Detective. On May 1, 2013, I went and spoke with the prosecutor who advised that he had contacted the Detective and that there was no surveillance videotape of the offense at the Neon Cowboy. No video surveillance of the offense was later available upon inquiry at the offense location. Based upon the prosecutor's statements, his agreement to turn over discovery, and his duty to disclose any exculpatory evidence, I operated under a reasonable belief that there was no surveillance videotape of the offense in his exclusive possession, custody and control or through his agents.

(*Id*. at 19-20.)

The state habeas court found that the affidavits were credible, no video surveillance recording was recovered, no evidence was suppressed, and Petitioner did not show counsel was ineffective. (*Id*. at 25-28.) He has not shown that the state court's rejection of these claims was unreasonable.

**B.      Investigation of Witnesses**

Petitioner contends counsel failed to investigate eyewitnesses; investigate any defense; challenge the statements of witness Charles Savage, Sr.; compel the disclosure of eyewitnesses' statements; and investigate discrepancies between the statements of witnesses Jeffrey Collins and

7

Stephanie Herring and the police reports that were based on those statements.

The prosecutor's affidavit stated, "All the videotapes that were collected by the police were turned over to the defense in advance of trial. This includes the videotaped statements of Douglas Thibodeaux, Deshauna Starling, and Elizabeth Harris …." (*Id*. at 14.)

Defense counsel's affidavit stated:

> I investigated this matter thoroughly and to the best of my ability. I reviewed, or had reviewed; all evidence turned over by the government and ·performed my own independent investigation. A review of the documents delivered by Mr. Herring (jail correspondence) was performed and information he provided during jail interviews was followed up on. I obtained the assistance of two highly skilled veteran investigators, Jeff Gardner and Vince Gonzales, to assist in the investigation of the matters. Jeff Gardner's responsibility was to assist me in guilt/innocent investigation and trial preparation and Vince Gonzales responsibility was to assist me in punishment/mitigation evidence investigation. I personally interviewed key witnesses Stephanie Herring (Mr. Herring's wife and at the scene of the offense), Douglas Thibadeaux (witness), Elizabeth Harris (witness), and Jeffery Collins (witness) with Investigator Jeff Gardner present. The interviews of witness Thibadeaux, Harris, and Colliris were performed at the Neon Cowboy with Jeff Gardner present. Further, reenactments of the actions seen by the witnesses were performed and photographs taken. Numerous attempts were made to contact witnesses Holly Starz (aka "Hollywood") and Troy Wallace to gain their assistance for trial. Investigation into Mr. Herring's mental health history was made and his treating physician was contacted and was to be subpoenaed for trial.
>
> ... Further, reenactments of the actions as seen by the witnesses were performed at the scene and photographs taken. These witnesses were willing to testify at trial if called.
>
> ... Charles Savage Sr.'s statements and testimony would have been cross-examined had the case proceeded to trial.
>
> ... On January 10, 2013 a <u>Motion for Discovery and Inspection of Evidence</u> was filed on Mr. Herrings behalf requesting all evidence in the matters within the governments exclusive possession, custody and control through its agents. The video interviews of the witnesses were received during discovery and reviewed for investigation. Witnesses were interviewed by myself and Investigator Jeff Gardner. Further, under Texas Rule of Evidence 615, had the case proceeded to trial, after any witness who testified for the prosecution, I would have requested the court to order the prosecution to produce for cross-examination any witness statement that were in the

prosecutions possession and related to the testimony delivered by the witness. (*Id*. at 20-21, 23.)

The state habeas court found that counsel performed an independent investigation of the case, interviewed witnesses, and had the assistance of two investigators. (*Id*. at 27.) The court found that Petitioner did not show that he received ineffective assistance of counsel. (*Id*.) He has not shown that the state court's rejection of these claims was unreasonable.

## IV. *BRADY* CLAIMS - VIDEO SURVEILLANCE TAPE

Petitioner contends the State withheld a video surveillance tape of the incident, which was exculpatory, and concealed and failed to preserve the tape.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "Brady claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

As discussed, the state court found that no video surveillance recording was recovered and that no evidence was suppressed. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

9

## V. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 25th day of April, 2017.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE